No. 10-1973

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

**FREEDOM FROM RELIGION FOUNDATION, INC., ANNE GAYLOR, ANNIE L. GAYLOR, DAN BARKER, and PAUL GAYLOR,**
*Plaintiffs-Appellees,*

v.

**BARACK OBAMA and ROBERT L. GIBBS,**
*Defendants-Appellants.*

---

On Appeal from the United States District Court
For the Western District of Wisconsin
Case No. 08–CV–588
The Honorable Judge Barbara B. Crabb

---

**BRIEF *AMICUS CURIAE* OF
WALLBUILDERS, INC.**
in support of *Defendants–Appellants*
Urging Reversal

---

Steven W. Fitschen
    Counsel of Record for *Amicus Curiae*
The National Legal Foundation
2224 Virginia Beach Blvd., St. 204
Virginia Beach, Virginia 23454
Phone:  (757) 463-6133
Email: nlf@nlf.net

Holly L. Carmichael
5096 Selinda Way
Los Gatos, California 95032
Phone: (408) 838-1212
Email: holly.l.carmichael
    @gmail.com

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

1. The full name of every party that the attorneys represent in this case:

   WallBuilders, Inc.

2. The names of all law firms whose partners or associates have appeared for the party in this case or are expected to appear:

   Steven W. Fitschen and Holly L. Carmichael are attorneys with The National Legal Foundation, a public-interest law firm in Virginia Beach, Virginia.

3. For all amici curiae that are corporations:

   i. Identify all parent corporations for all amicus parties:

      None.

   ii. List any publicly held company that owns 10% or more of any amicus party's stock:

      None.

s/  Steven W. Fitschen
Steven W. Fitschen
        Counsel of Record for *Amicus Curiae*
The National Legal Foundation
2224 Virginia Beach Blvd., Suite 204
Virginia Beach, Virginia 23454
(757) 463-6133

# TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE*.............................................................1

SUMMARY OF ARGUMENT......................................................................1

ARGUMENT ..............................................................................................2

I.    THE COURT BELOW ERRED IN ITS THRESHOLD
CHARACTERIZATION OF §119 AS AN "ENDORSEMENT" OF
RELIGION; THE FACTS INDICATE THAT §119 IS A
CONSTITUTIONALLY PERMITTED ACKNOWLEDGEMENT,
ACCOMMODATION, OR ENCOURAGEMENT OF RELIGION. .....................2

    A.   *True Establishment of Religion is Prohibited, but §119 Does Not
Establish Religion.* ................................................................3

    B.   *Acknowledgement of Religion is Permitted, and §119
Constitutionally Acknowledges Religion.*...................................8

    C.   *Accommodation of Religion is Also Permitted, and §119 may
Accommodate Religion.* ..........................................................11

    D.   *Encouragement of Religion is Also Permitted, and §119 may
Encourage Religion.* ..............................................................13

    E.   *Acknowledgement, Accommodation, and Encouragement of Religion
Do Not Conflict with the Neutrality Principle.* ...........................16

    F.   *Endorsement Should Not be Confused with Encouragement.* ........17

II.   THE COURT BELOW APPLIED THE WRONG TEST WHEN IT USED
*LEMON* AND IMPROPERLY DISCARDED THE MORE
APPROPRIATE *MARSH* TEST. .................................................................17

    A.   *Marsh is Not Merely a One-Instance Anomaly; Marsh is an Accepted
Analysis to be Used in Appropriate Establishment Clause
Challenges.*............................................................................18

    B.   *Marsh is Appropriate for §119 Because Prayer is Deeply Rooted in
America's History; Moreover, Under Marsh, §119 Does Not Violate
the Establishment Clause.*......................................................22

CONCLUSION ............................................................................................26

# TABLE OF AUTHORITIES

## Cases

*ACLU of Ohio v. Capitol Square Review & Advisory Bd.*, 243 F.3d 289
(6th Cir. 2001) ........................................................................................ 21

*Allegheny County v. ACLU*, 492 U.S. 573 (1989).................................... 13, 15, 20, 22

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986) ................................... 13

*Berry v. Dep't of Soc. Servs.*, 447 F.3d 642 (9th Cir. 2006)........................................ 3

*Bowsher v. Synar*, 478 U.S. 714 (1986)...................................................................... 20

*City of Boerne v. Flores*, 521 U.S. 507 (1997)........................................................... 11

*Coles ex rel. Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369 (6th Cir. 1999) ........ 19-20

*Comm. for Pub. Educ. & Religious Liberty v. Nyquist,* 413 U.S. 756 (1973) ............ 13

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) .................................................................... 5

*Edwards v. Aguillard*, 482 U.S. 578 (1987) ............................................................... 20

*Epperson v. Arkansas*, 393 U.S. 97 (1968) ............................................................ 16-17

*Everson v. Bd. of Educ.*, 330 U.S. 1 (1947) ................................................................ 19

*Freedom From Religion Foundation v. Obama*, No. 08-CV-588, 2010 U.S.
Dist. LEXIS 37570 (W.D. Wis. Apr. 15, 2010) .........................................*passim*

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001) ................................... 16-17

*Graham v. Cent. Cmty. Sch. Dist,* 608 F. Supp. 531 (S.D. Iowa 1985)...................... 20

*Harmelin v. Michigan*, 501 U.S. 957 (1991) .......................................................... 4, 20

*Hinrichs v. Bosma*, 440 F.3d 393 (7th Cir. 2006) ................................................. 21, 23

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) ..... 13, 20

ii

*Lee v. Weisman,* 505 U.S. 577 (1992) ................................................. 20

*Lemon v. Kurtzman*, 403 U.S. 602 (1971)................................... 2, 9, 14, 17-19, 21-22

*Lynch v. Donnelly*, 465 U.S. 668 (1984)................................. 6, 9, 17, 20, 22

*Marsh v. Chambers*, 463 U.S. 783 (1983) ........................................ 2, 17-24

*McCreary County v. ACLU*, 545 U.S. 844 (2005) ................................. 4, 9-11, 19, 22

*Meek v. Pittenger*, 421 U.S. 349 (1975) ................................................. 14

*Murray v. City of Austin, Tex.*, 947 F.2d 147 (5th Cir. 1991) ................................... 21

*Newdow v. Bush*, 355 F. Supp. 2d 265, 283 (D.D.C. 2005) ........................................ 19

*Newdow v. Roberts*, No. 09-5126, 2010 U.S. App. LEXIS 9370 (D.C. Cir. May 7, 2010) ................................................. 24

*Pelphrey v. Cobb County*, 547 F.3d 1263 (11th Cir. 2008)........................................ 23

*Printz v. United States*, 521 U.S. 898 (1997)........................................ 20

*Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819 (1995) ................................................. 16-17, 20

*Sch. Dist. of Abington Township v. Schempp*, 374 U.S. 203 (1963)..................... 16-17

*Sch. Dist. of Grand Rapids v. Ball*, 473 U.S. 373 (1985) ............................................ 20

*Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437 (7th Cir. 1992).................... 21

*Simpson v. Chesterfield County Bd. of Sup'rs*, 404 F.3d 276 (4th Cir. 2005) ........... 21

*Stone v. Graham*, 449 U.S. 39 (1980)........................................................ 15

*Tanford v. Brand*, 104 F.3d 982 (7th Cir. 1997) ........................................ 21

*United States v. Gaudin*, 515 U.S. 506 (1995)............................................. 4

*Van Orden v. Perry*, 545 U.S. 677 (2005) ............................................ 4, 13, 19, 20, 22

*Van Zandt v. Thompson*, 839 F.2d 1215 (7th Cir. 1988) ............................................ 21

*Wallace v. Jaffree*, 472 U.S. 38 (1995) ......................................................... 4, 13-14, 20

*Walz v. Tax Com'n of New York*, 397 U.S. 664 (1970) ............................................. 14

*Widmar v. Vincent*, 454 U.S. 263, 276 (1981) ............................................................. 5

*Zorach v. Clauson*, 343 U.S. 306 (1952) ......................................................... 6, 13-14

## Constitution

U.S. Const. amend. I ........................................................................................................ 3

## Statutes

4 U.S.C. §7(c) (2006) ...................................................................................................... 6

4 U.S.C. §7(k) (2006) ...................................................................................................... 6

10 U.S.C. §6031(a) (2006) .............................................................................................. 6

15 U.S.C. §13c (2006) ..................................................................................................... 6

16 U.S.C. §479 (2006) ..................................................................................................... 6

16 U.S.C. §607a (2006) ................................................................................................. 6-7

26 U.S.C. §79(7) (2006) .................................................................................................. 7

30 U.S.C. §1272 (2006) ................................................................................................... 7

33 U.S.C. §701r (2006) .................................................................................................... 7

36 U.S.C. §106 (2006) ..................................................................................................... 7

36 U.S.C. §107 (2006) ..................................................................................................... 7

36 U.S.C. §108 (2006) ..................................................................................................... 7

36 U.S.C. §111 (2006) ..................................................................................................... 7

36 U.S.C. §119 (2006) ........................................................................................... *passim*

36 U.S.C. §141 (2006) ........................................................................ 7

42 U.S.C. §13791(d)(1) (2006)......................................................... 7

42 U.S.C. §16989(a)(1) (2006) ......................................................... 7

Pub. L. No. 82-324 (1952) .............................................................. 8

**Other Authorities**

Br. for American Center for Law and Justice and United States
    Representatives as *Amici Curiae* Supp. Def. ............................... 8, 18

Br. of Def.-Appellants ............................................................... 8, 18

Br. of Def. Shirley Dobson in Supp. of Mot. for Summ. J. 21-24 ............ 8, 18

Letter from George Washington to the Religious Society Called Quakers (Oct.
    1789), *in George Washington on Religious Liberty and Mutual
    Understanding* 11 (E. Humphrey ed. 1932) ............................... 11-12

Joseph Story, *Commentaries on the Constitution of the United States*
    (Arthur E. Sutherland ed. 1970) (1833)) ..................................... 3-4

The Northwest Ordinance (July 13, 1787), *available at*
    http://www.earlyamerica.com/earlyamerica/milestones/ordinance/
    text.html (last visited July 2, 2010) ............................................ 13

U.S. Navy, Careers & Jobs, Religion, Chaplains and Religious Specialists,
    http://www.navy.com/navy/careers/arts-education/religion.html (last
    visited July 7, 2010) ................................................................ 6

v

## INTEREST OF *AMICUS CURIAE*

WallBuilders, Inc., is a non-profit organization that is dedicated to the restoration of the moral and religious foundation on which America was built. WallBuilders' President, David Barton, is a recognized authority on American history and on the role of religion in public life. As a result of his expertise in these areas, he works as a consultant to national history textbook publishers. He has been appointed by the State Boards of Education in states such as California and Texas to help write the American history and government standards for students in those states. Mr. Barton also consults with Governors and State Boards of Education in several states, and he has testified in numerous state legislatures on American history. Much of his knowledge is gained through WallBuilders' vast collection of rare, primary documents of American history, including more than 70,000 documents predating 1812.

Furthermore, WallBuilders encourages citizens all across America to continue the tradition of bringing religious perspectives to bear in public life. WallBuilders desires to see religion treated as the Framers of the First Amendment intended and seeks to clarify what the establishment of religion really means.

This Brief is filed pursuant to consent of all parties.

## SUMMARY OF ARGUMENT

This Brief makes one argument (without introducing any new *issues*) not made by Defendants-Appellants Barack Obama and Robert L. Gibbs (hereinafter, "the President") and expands upon one argument made by the President. Specifically, this Brief shows that the Framers of the First Amendment were aware

1

of four concepts: the acknowledgement of religion, the accommodation of religion, the encouragement of religion, and the establishment of religion. When these four concepts are properly understand, it becomes clear that 36 U.S.C 119 (2006) conforms to the Establishment Clause. This Brief also expands upon the President's argument that §119 is constitutional under *Marsh v. Chambers*, 463 U.S. 783 (1983). First, *Marsh* in not an anomaly; it is a routinely applied precedent. Second, it is an exception to the test from *Lemon v. Kurtzman,* 403 U.S. 602, (1971). Thus, even if the court below was correct in its view that §119 is unconstitutional under *Lemon*, §119 must still be evaluated under *Marsh*. Section 119 passes muster under *Marsh* because it not proselytize, advance, or disparage any religion.

## ARGUMENT

**I.    THE COURT BELOW ERRED IN ITS THRESHOLD CHARACTERIZATION OF §119 AS AN "ENDORSEMENT" OF RELIGION; THE FACTS INDICATE THAT §119 IS A CONSTITUTIONALLY PERMITTED ACKNOWLEDGEMENT, ACCOMMODATION, OR ENCOURAGEMENT OF RELIGION.**

The Framers were aware of four concepts regarding the interaction of government and religion: the acknowledgement of religion, the accommodation of religion, the encouragement of religion, and the establishment of religion. When drafting our Constitution, the Framers determined that governmental acknowledgement, accommodation, and encouragement of religion are all permissible. Only the establishment of religion is forbidden. Despite the importance of the distinction between permitted actions and impermissible establishment, the court below did not adequately support its key—and incorrect— conclusion that §119 establishes a religion. *Freedom From Religion Foundation v.*

2

*Obama*, No. 08-CV-588, 2010 U.S. Dist. LEXIS 37570, at *8, *46 (W.D. Wis. Apr. 15, 2010) (hereinafter *FFRF*). If the court below had done so, it would have upheld the law as a constitutionally permissible acknowledgement, or perhaps a constitutional accommodation or encouragement of religion.

### A. True Establishment of Religion is Prohibited, but §119 Does Not Establish Religion.

In recent years, a distorted meaning of "establishment" of religion has taken root. That distortion has generated convoluted precedent that is, admittedly, difficult to navigate. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642 (9th Cir. 2006) (referencing the hazardous "shoals of the Establishment Clause."). It is therefore important for any court to set its compass in an Establishment Clause analysis with an accurate understanding of what the First Amendment prohibits with the words "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I.

"The real difficulty lies in ascertaining the limits, to which government may rightly go in fostering and encouraging religion." Joseph Story, *Commentaries on the Constitution of the United States* §1866 (Arthur E. Sutherland ed. 1970) (1833)). In his illuminating *Commentaries*, the long-serving Justice Story went on to describe three ways in which a government might establish religion:

1. "[W]here it creates such an establishment, and excludes all persons, not belonging to it, either wholly, or in part, from any participation in the public honours, trusts, emoluments, privileges, and immunities of the state;"

3

2. "[W]here a government affords aid to a particular religion, leaving all persons free to adopt any other;" and

3. "[W]here it creates an ecclesiastical establishment for the propagation of the doctrines of a particular sect of that religion, leaving a like freedom to all others."

The Establishment Clause, as understood in the era of its own drafters, prohibits these three types of government actions.[1]  Section 119 does not fall into any of these prohibited categories of establishment.

The first type of establishment is the creation of a government-established church that "excludes all persons, not belonging to it . . . from any participation in the public honours, trusts, emoluments, privileges, and immunities of the state." Story, *Commentaries* at §1866.  This type of establishment discriminates against many sects and is clearly prohibited.  But §119 is not only inclusive of all persons

---

[1] Admittedly, "[h]istory . . . does not give clear and certain answers to questions about the limits of 'religion' or 'establishment.'" *McCreary County v. ACLU*, 545 U.S. 844, 880 n.26 (2005).  History is, however, a valuable starting point.  It is true that some have questioned the continuing validity of another unrelated Establishment Clause passage from Justice Story's *Commentaries* in light of America's modern religious diversity.  *Van Orden v. Perry*, 545 U.S. 677, 726-30 (2005); *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *66-67.  Nevertheless, "[r]eliance on our Nation's early constitutional scholars is common in this Court's opinions.  In particular, [then-Justice Rehnquist] once noted that 'Joseph Story, a Member of this Court from 1811 to 1845, and during much of that time a professor at the Harvard Law School, published by far the most comprehensive treatise on the United States Constitution that had then appeared.'  And numerous opinions of this Court . . . have seen it fit to give authoritative weight to Joseph Story's treatise when interpreting other constitutional provisions." *Van Orden*, 545 U.S. at 728 n.31 (Stevens, J., dissenting) (quoting *Wallace v. Jaffree*, 472 U.S. 38, 104 (1995); citing *United States v. Gaudin*, 515 U.S. 506, 510-11 (1995); *Harmelin v. Michigan*, 501 U.S. 957, 981-82 (1991)).

who wish to pray in any manner, but it also does not exclude persons who choose *not* to pray on this one day each year from participation in any public events, rights, privileges or immunities of the state.

The last two types of prohibited government establishment address the aid to or the ecclesiastical establishment of a particular religion. Despite the plainly neutral language of §119, which involves a vast array of religions and attitudes towards prayer, the court below illogically attributed "a specifically Christian form of prayer" to the language of the statute. *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *35. The court below believed that §119 referred to a particular religion— Christianity—for two very attenuated reasons.

First, the court below relied on the fact that §119 referred to "'churches' but no other places of worship." *Id.* It is illogical, however, to assume that this statutory reference to "church" is limited to Christian churches. The often-quoted phrase "separation of church and state" has never been interpreted to apply solely to the Christian religion. Instead, "church" is used as a general description for all religious orders. *See, e.g., Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005) ("[T]he Establishment Clause, commands a separation of *church* and state. The . . . Free Exercise Clause, requires government respect for, and noninterference with, the *religious beliefs and practices of our Nation's people*.) (emphasis added); *Widmar v. Vincent*, 454 U.S. 263, 276 (1981) (holding that "the state interest asserted here—in achieving greater separation of church and State" was not "sufficiently 'compelling' to justify content-based discrimination against respondents' *religious* speech")

(emphasis added); *Lynch* v. *Donnelly*, 465 U.S. 668, 673 (1984) ("Nor does the Constitution require complete separation of church and state; it affirmatively mandates accommodation, not merely tolerance, of *all religions . . .*") (emphasis added); *Zorach v. Clauson*, 343 U.S. 306, 312-13 (1952) (equating, in the context of this phrase, "church" with "religion," "religious groups," and "places of worship").

Congress also uses the term "church" in various statutes to generally refer to religious orders. *See, e.g.,* 4 U.S.C. §7(c) (2006) (allowing the display of a "church" pennant above or to the right of the U.S. flag during "church services conducted by naval chaplains (representing "various denominations, theologies and religions," U.S. Navy, Careers & Jobs, Religion, Chaplains and Religious Specialists, http://www.navy.com/navy/careers/arts-education/religion.html (last visited July 7, 2010)) at sea"); 4 U.S.C. §7(k) (2006) (describing proper flag display "in a church or public auditorium" and referring to all houses of worship); 10 U.S.C. §6031(a) (2006) (describing an officer in the Chaplain Corps as "conduct[ing] public worship according to the manner and forms of the church of which he is a member;" "church" referring to all religious services); 15 U.S.C. §13c (2006) (listing "schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profit;" "church" referring to all not-for-profit religious organizations); 16 U.S.C. §479 (2006) (allowing settlers in a national forest to "maintain schools and churches within such national forest;" "churches" referring to the settlers' house of worship); 16 U.S.C. §607a (2006) (permitting the use of timber from public lands in Alaska "by churches, hospitals, and charitable institutions in Alaska;" "churches"

referring generically to religious orders); 26 U.S.C. §79 (7) (2006) (using the term "church plan" and "church employee" to describe benefits plans and employees of any organization with §501(c)(3) status); 30 U.S.C. §1272 (2006) (prohibiting surface coal mining "within three hundred feet of any public building, school, church, community, or institutional building, public park;" "church" referring to any house of worship); 33 U.S.C. §701r (2006) (authorizing the Secretary of the Army to allot funds for flood control and damage prevention "to highways, bridge approaches, and public works, churches, hospitals, schools, and other nonprofit public services;" referring to any house of worship); 42 U.S.C. §13791(d)(1) (2006) (defining eligible entities for receipt of certain grant funds as "a college or university, a local or State park or recreation center, church, or military base;" referring to all religious orders); 42 U.S.C. §16989(a)(1) (2006) (describing the Fugitive Safe Surrender program as a "partnership with public, private, and faith-based organizations, which temporarily transforms a church into a courthouse;" "church" referring to the meeting place for those faith-based groups).

Within Title 36, Congress also uses the term "church" as a general religious reference rather than limiting statutes to activities in Christian churches. *See, e.g.*, 36 U.S.C. §§106, 107, 108, 111, and 141 (2006) (designating Constitution Day, Citizenship Day, Columbus Day, Constitution Week, Gold Star Mother's Day, and Thomas Jefferson's birthday as worthy of observation "in schools and churches, or other suitable places, with appropriate ceremonies"). Similarly, §119 proclaims the first Thursday in May to be a day on which—contrary to Congress' customary

usage—Americans may observe the National Day of Prayer "at churches, in groups, and as individuals." If this Court adopts the statutory reading of the court below, which understands "church" to be limited only to Christian churches, the constitutionality of all of the cited statutes may also be in jeopardy.

The second reason cited by the court below for its belief that §119 refers solely to Christian prayer is based on the history of the statute. *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *35. The original law stated that the National Day of Prayer would occur annually on any day *except* Sunday. Pub. L. No. 82-324 (1952). It is unclear how excluding Sunday—which is the generally accepted Christian day of worship—led the court below to its conclusion that a National Day of Prayer on any other day must refer exclusively to Christian prayer. A request to place the day on a day other than Sunday more logically supports a conclusion that the law does not aid any particular religion. As a result, §119 does not "establish" a religion within any of the proper meanings of the word.

### B. *Acknowledgement of Religion is Permitted, and §119 Constitutionally Acknowledges Religion.*

The court below correctly noted that the Establishment Clause allows government acknowledgement of religion. In their Briefs, here and at the District Court, the President and other *Amici* have demonstrated America's rich history of acknowledging religion—and a history of repeatedly acknowledging God. (*See, e.g.,* Br. of Def.-Appellants 2-6, 42-48; Br. of Def. Shirley Dobson in Supp. of Mot. for Summ. J. 21-24; Br. for American Center for Law and Justice and United States Representatives as *Amici Curiae* Supp. Def. 4-8, A1-A59.) Nevertheless, the court

8

below ignored this history and instead applied its own definition of permissible acknowledgement of religion: "'acknowledgement' of religion [is only] permissible when it is part of a larger secular message." *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *47.

This new definition of acknowledgement has little jurisprudential support. The court below inaccurately cited *Lynch v. Donnelly*, 465 U.S. 668, 679-80 (1984) as somehow requiring a larger secular message in order to qualify as a permissible acknowledgement of religion. *Lynch* addressed whether a municipal display of various secular and religious Christmas symbols, including a crèche, violated the Establishment Clause. While the *Lynch* crèche was, in fact, part of a larger secular message, the presence of a larger secular message was not the sole factor in the Court's holding that the city may display a crèche. Instead, the *Lynch* court merely found it "useful to inquire whether the challenged law or conduct has a secular purpose . . . [b]ut, we have repeatedly emphasized our unwillingness to be confined to any single test or criterion in this sensitive area." *Lynch*, 465 U.S. at 679.[2]

The Supreme Court has been clear about the meaning of unacceptable acknowledgement: Government action that "insistently call[s] for religious action on the part of citizens" or "express[es] a purpose to urge citizens to act in prescribed ways as a personal response to divine authority." *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *47-48 (quoting *McCreary County v. ACLU*, 545 U.S. 844, 877 n.24

---

[2] *Lynch* applied the three-part *Lemon* test. While *Lemon* is often used to evaluate possible Establishment Clause violations, *Lemon* is not the appropriate test to distinguish between acceptable acknowledgement and an Establishment Clause violation.

9

(2005)).  Although the court below cited this language, it failed to correctly apply it. *McCreary* addressed courtroom displays of the Ten Commandments.  In that case, the Court considered not just the displays, but also various county resolutions directing that the displays should be placed in courtrooms.  The *McCreary* court held that those resolutions "expressed a purpose to urge citizens to act in prescribed ways as a personal response to divine authority."  *McCreary*, 545 U.S. at 877  n.24. But §119 expresses no such purpose.  Section 119 can hardly be said to "insistently call for religious action," nor does §119 urge citizens to act in any prescribed way. §119 simply and constitutionally acknowledges prayer and states that citizens may pray.[3]

---

[3] 36 U.S.C. §119 states:

> The President shall issue each year a proclamation designating the first Thursday in May as a National Day of Prayer on which the people of the United States *may* turn to God in prayer and meditation at churches, in groups, and as individuals.  (Emphasis added.)

Despite this language, the court below interpreted §119 to mean "prayer imposed on the people."  *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *64 (quotation omitted).  That view, according to the court below, eliminated the possibility that §119 permissibly acknowledges religion.  *Id.*  In addition, the court below misstated precedent.  The *McCreary* footnote cited by the court below did not say that a call for religious action could not be a permissible acknowledgement.  *Id.* at *63-64 (citing *McCreary*, 545 U.S. at 877 n.24). Rather, that footnote addressed a circumstance when the "apparent and openly acknowledged *purpose*" of various county resolutions was to "insistently call for religious action" and to "act in prescribed ways as a personal response to divine authority."  *McCreary*, 545 U.S. at 877 n.24. Under those circumstances, an otherwise permissible acknowledgement of religion violated the *Lemon* test.

The *McCreary* footnote is consistent with the Supreme Court's holdings in its school prayer cases.[4]  The court below incorrectly viewed the Supreme Court's school prayer decisions as "seem[ing] to bear directly on the constitutionality of §119."  *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *34.  The court below makes no distinction between school prayer, which is most often in the context of young and impressionable children in a classroom where an authority figure designates a time when only prayer or silence takes place, and a Presidential proclamation issued to American citizens.  America's citizens are not schoolchildren.  Americans are fully able to decide whether, how, and when they might pray despite (or perhaps even because of) a Presidential proclamation acknowledging prayer.

### C. Accommodation of Religion is Also Permitted, and §119 may Accommodate Religion.

The Establishment Clause does not limit government action to acknowledgement of religion.  The government may also accommodate various sects' religious views and acts.  Governmental accommodation of religion was important to our first president, George Washington, who wrote "[I]n my opinion the conscientious scruples of all men should be treated with great delicacy and tenderness; and it is my wish and desire, that the laws may always be as extensively accommodated to them, as a due regard to the protection and essential interests of the nation may justify and permit."  Letter from George Washington to

---

[4] Your *Amicus* does not necessarily believe that the school prayer cases were rightly decided.  *See supra* Part I.A, paragraph one.  Nevertheless, because this Court is bound by the precedent of the Supreme Court, your *Amicus* also accepts the school prayer cases as precedent for the purpose of this case.

the Religious Society Called Quakers (Oct. 1789), *in George Washington on Religious Liberty and Mutual Understanding* 11 (E. Humphrey ed. 1932).

Importantly, Justice O'Connor quoted this very passage in her dissent in *City of Boerne v. Flores*. 521 U.S. 507, 562 (1997) (O'Connor, J., dissenting). In *Flores*, Justices O'Connor and Scalia debated whether Washington's sentiment and similar attitudes expressed during the colonial and early national period demonstrate that accommodation is constitutionally required. *Compare id.* at 560-64 (O'Connor, J., dissenting) *with id.* at 541-44 (Scalia, J., concurring in part). This Brief is not concerned with whether the Constitution requires accommodation. The Justices' debate, however, revealed their agreement that many historic practices that continue in our present society constitute an accommodation of religion. Such practices include exemptions from military service and exemptions from oath-taking, among others. *Id.* at 560-64 (O'Connor, J., dissenting); *id.* at 541-44 (Scalia, J., concurring in part).

The court below accurately observed that accommodation generally takes the form of governmental exceptions. *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *49. While exceptions are the normal form of accommodation, no precedent limits accommodation to exceptions from a government-imposed burden. This Court could, therefore, hold that §119 accommodates religion by placing a recurring date on the calendar. That action arguably accommodates religious citizens' desire to organize and observe the National Day of Prayer. In that event, §119 would be a constitutional accommodation of religion.

12

### D. *Encouragement of Religion is Also Permitted, and §119 may Encourage Religion.*

Governments can, in fact, go beyond acknowledgement or accommodation and can constitutionally encourage religion. In fact, government encouragement of religion is a long-standing premise. The Northwest Ordinance of 1787, which was reenacted by the First Congress, states: "Religion, morality, and knowledge, being necessary to good government and the happiness of mankind, schools, and the means of education shall forever be encouraged." The Northwest Ordinance (July 13, 1787), *available at* http://www.earlyamerica.com/earlyamerica/milestones/ordinance/text.html (last visited July 2, 2010). History illustrates that America's past is filled with examples of government encouragement of religion. *See, e.g., Wallace v. Jaffree*, 472 U.S. 38, 103-04 (1985) (Rehnquist, J., dissenting) (describing appropriation of government funds to provide sectarian education to Indian tribes).

Government encouragement of religion cannot be dismissed as a historic idiosyncrasy. Courts have repeatedly recognized the validity of government acts encouraging religion with the following words "When the state encourages religious instruction . . . it follows the best of our traditions." *Van Orden v. Perry*, 545 U.S. 677, 684 (2005) (Rehnquist, C.J, & Scalia, Kennedy, & Thomas, J.J., plurality) (quoting *Zorach v. Clauson*, 343 U.S. 306, 313-14 (1952)). Those same word have appeared in no less than eleven Supreme Court opinions. *See Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 400-01 (1993) (Scalia & Thomas, J.J,, concurring); *Allegheny County v. ACLU*, 492 U.S. 573, 657 (1989) (Kennedy, White & Scalia, J.J, & Rehnquist, C.J., concurring in the judgment in

13

part and dissenting in part) *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 554 (1986) (Burger, C.J., & White & Rehnquist, J.J., dissenting); *Wallace v. Jaffree*, 472 U.S. 38, 74 (1985) (O'Connor, J., concurring); *Meek v. Pittenger*, 421 U.S. 349, 386 (1975) (Burger, C.J., concurring in the judgment in part and dissenting in part); *Meek v. Pittenger*, 421 U.S. 349, 395-96 (1975) (Rehnquist & White, J.J., concurring in the judgment in part and dissenting in part); *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 813 (1973) (White, J., dissenting, joined in part by Burger, C.J., & Rehnquist, J.) (opinion applying also to two consolidated cases); *Lemon v. Kurtzman,* 403 U.S. 602, 665 (1971) (White, J., concurring in two consolidated cases and dissenting in two consolidated cases); *Walz v. Tax Com. of New York*, 397 U.S. 664, 672 (1970) (Burger, C.J., & Black, Stewart, White, & Marshall, J.J.); and *Zorach v. Clauson*, 343 U.S. 306, 313-14 (1952) (Vinson, C.J., & Reed, Douglas, Burton, Clark, & Minton, J.J.).[5]

The court below characterizes §119 as government encouragement "to pray every first Thursday in May." *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *48. While that characterization is debatable,[6] there is no reason to debate it. Even if §119 encourages prayer, it does not violate the Establishment Clause because the encouragement of religion is constitutional.

---

[5] All but Justice O'Connor's are positive invocations of this proposition. Justice O'Connor noted that the proposition was inapposite as used by appellants in *Wallace*.

[6] *See supra* note 3.

Instead, the court below made the leap of equating the *encouragement* of prayer with *inducing* prayer among schoolchildren. *See FFRF*, 2010 U.S. Dist. LEXIS 37570, at *33 ("A reasonable observer of the statute . . . would conclude that the federal government is *encouraging* [the observer] to pray") (emphasis added) *and id.* at *33-34 (citing *Stone v. Graham*, 449 U.S. 39, 42 (1980) ("If the [challenged government action has] any effect at all, it will be to *induce* the schoolchildren to read, meditate, upon, perhaps to venerate and obey, the [Ten] Commandments.") (emphasis added)).  The court below offers no support for its gross mischaracterization of the statute's effect, which is most certainly not to induce unwilling or vulnerable Americans to pray, venerate, nor obey any religious tenets.

By giving short shrift to the likelihood that §119 acknowledges, accommodates, or encourages religion, the court below has fallen into the very trap that four Supreme Court Justices cautioned against.  In *Allegheny County*, 492 U.S. 573, the Supreme Court held that under the specific facts of that case, a state display of a menorah was constitutional but a crèche violated the Establishment Clause.  The *Allegheny* opinion quoted several statements from past Supreme Court opinions—many of which the court below also quoted.  But in their concurrence, four Justices cautioned against a selective reliance on those isolated statements to justify an elimination of all governmental references to religion:

> These statements must not give the impression of a formalism that does not exist.  Taken to its logical extreme, some of the language quoted above would require a relentless extirpation of all contact between government and religion.  But that is not the history or the purpose of the Establishment Clause.  Government policies of

accommodation, acknowledgment, and support for religion are an
accepted part of our political and cultural heritage.

*Id.* at 657 (Kennedy, J., concurring in part and dissenting in part).

### E. Acknowledgement, Accommodation, and Encouragement of Religion Do Not Conflict with the Neutrality Principle.

Recognizing that the Establishment Clause prohibits *only* establishment

frames the issue quite differently from the approach of the court below.  The court

below began with the premise that Establishment Clause questions "revolve around

principles of neutrality or equality, both among different religions and between

religion and nonreligion."  *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *23.  It is true

that the government should be neutral towards religion.  *See, e.g., Good News Club

v. Milford Cent. Sch.*, 533 U.S. 98, 114 (2001); *Rosenberger v. Rector and Visitors of

Univ. of Virginia*, 515 U.S. 819, 839 (1995); *Epperson v. Arkansas*, 393 U.S. 97

(1968); *Sch. Dist. of Abington Township v. Schempp*, 374 U.S. 203, 215-18 (1963).

The neutrality principle is not antithetical to the encouragement of religion—once

"encouragement" is understood.

The court below, however, failed to lay the important groundwork of what is

prohibited "establishment" and what is permitted acknowledgement,

accommodation, and encouragement.  Against that backdrop, prohibited

government "favor [of] one religion over another, or religion over irreligion," *FFRF*,

2010 U.S. Dist. LEXIS 37570, at *23-24 (citations omitted), logically must require

some action beyond permitted acknowledgement, accommodation, or

encouragement.  Indeed, the "neutrality principle" rules out hostility towards

religion.

In each of the "neutrality" cases cited above (*Good News*, *Rosenberger*, *Epperson*, and *School District of Abington Township*), hostility was painted as the opposite of neutrality.  And in each of the "encouragement" opinions cited above (those that quoted "When the state encourages religious instruction . . . it follows the best of our traditions"), hostility was also juxtaposed against encouragement.  Thus, under the neutrality principle, encouragement is permissible.

### F.  Endorsement Should Not be Confused with Encouragement.

The court below collapsed the first two parts of the *Lemon* test into a single "endorsement test."  It then confused endorsement with encouragement.  *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *26-27.  But, as discussed above, encouragement is permitted while the *Lemon* "endorsement" factors describe prohibited acts.  Encouragement and endorsement cannot be used interchangeably in an Establishment Clause analysis.  If the court below had followed a framework that first defined the parameters of permitted and prohibited actions under the Establishment Clause, it would have avoided this confusion—and the resulting erroneous holding.  In addition, the convoluted approach of the court below rushed to apply *Lemon* and failed to appropriately consider whether *Lemon* should even apply to §119.

## II.   THE COURT BELOW APPLIED THE WRONG TEST WHEN IT USED *LEMON* AND IMPROPERLY DISCARDED THE MORE APPROPRIATE *MARSH* TEST.

Supreme Court Justices have cautioned against exclusive reliance on the *Lemon* test.  "[W]e have repeatedly emphasized our unwillingness to be confined to any single test or criterion in this sensitive area."  *Lynch*, 465 U.S. at 679.  In some

instances, *Lemon* may be used.  But when courts consider Establishment Clause challenges to religious practices with historic roots, the rationale of *Marsh v. Chambers*, 463 U.S. 783 (1983), is widely preferred over the *Lemon* test.

Despite the widespread use of *Marsh* when addressing religious practices with historic roots and despite the extensive briefings by the President and other *Amici* demonstrating the historic prominence of public prayer and government declarations of prayer,[7] the court below summarily dismissed the reality that "prayer is deeply embedded in the history and tradition of this country," *Marsh*, 463 U.S. at 786.  In *Marsh*, the Supreme Court considered whether legislative prayer— which is also deeply embedded in America's history and tradition—violated the Establishment Clause.  The Supreme Court diverged from the commonly-used *Lemon* test and held that despite a religious purpose, effect, or government entanglement, legislative prayer does not violate the Establishment Clause.  But despite the obvious parallels between *Marsh* and §119, the court below performed only a cursory consideration of whether *Marsh* is more appropriate in this instance than *Lemon*.  *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *58-74.  A full and accurate analysis reveals that *Marsh* is, in fact, the more appropriate test.

### A. Marsh *is Not Merely a One-Instance Anomaly;* Marsh *is an Accepted Analysis to be Used in Appropriate Establishment Clause Challenges.*

The court below dismissed *Marsh* as a one-time legal incongruity and chose to apply *Lemon* for the wholly unsatisfying reason that "it remains the predominant

---

[7] Br. of Def.-Appellants 2-6, 42-48; Br. of Def. Shirley Dobson in Supp. of Mot. for Summ. J. 21-24; Br. for American Center for Law and Justice and United States Representatives as *Amici Curiae* Supp. Def. at 4-8, A1-A59.

test of the Supreme Court and the Court of Appeals for the Seventh Circuit." *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *30-31. While *Lemon* may be the most commonly used test in Establishment Clause cases, common use does not dictate exclusive use.

In addition, failure to meet all of the three *Lemon* prongs is not the end of an Establishment Clause analysis. In special instances, *Marsh* is a valid *exception* to *Lemon*. *McCreary*, 545 U.S. at 859 n.10; *Van Orden*, 545 U.S. at 688 (plurality); *Newdow v. Bush*, 355 F. Supp. 2d 265, 283 (D.D.C. 2005) ("There are exceptions to the Lemon test, however, and one of those exceptions, reflected in *Marsh* is of particular relevance here." (citation omitted)). Section 119 is one of those special instances and the court below erred by failing to fully consider whether there was good reason to apply *Marsh*.

The Supreme Court has observed that "[a]t least since *Everson v. Board of Education of Ewing*, 330 U.S. 1 (1947), it has been clear that Establishment Clause doctrine lacks the comfort of categorical absolutes. In special instances we have found good reason to hold governmental action legitimate even where its manifest purpose was presumably religious." *McCreary*, 545 U.S. at 859 n.10 (citing *Marsh* as an example of one of those instances). In *Van Orden*, the Supreme Court specifically referred to *Marsh* as an example of how the recognition of God's role in our nation's heritage is permissible under the Establishment Clause. *Van Orden*, 545 U.S. at 688 (plurality).

Instead, the court below dismissed *Marsh* as a "one-of-a-kind" case and quoted a Sixth Circuit opinion in support of that view. *FFRF*, 2010 U.S. Dist.

LEXIS 37570, at *61 (quoting *Coles ex rel. Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 381 (6th Cir. 1999)).  *Coles*, however, never asserted that *Marsh* was a one-time exception.  The *Coles* court was wrestling with the possible scope of *Marsh*; it never questioned whether *Marsh* should be considered as an alternative Establishment Clause test.  When the *Coles* court called *Marsh* a "one-of-a-kind" case, it was lamenting the absence of additional Supreme Court cases precisely describing instances where *Marsh* should be applied.  The *Coles* court never doubted the enduring validity of *Marsh*.  Rather, *Coles* addressed whether it should apply *Marsh* or *Lee v. Weisman,* 505 U.S. 577 (1992), to an issue regarding school board prayers.  The *Coles* court could not have believed that *Marsh* has no continuing validity when the Supreme Court had cited *Marsh* in at least eleven cases by that time.  *Printz v. United States*, 521 U.S. 898, 905 (1997); *Rosenberger*, 515 U.S. at 858; *Lamb's Chapel*, 508 U.S. at 399 (Scalia, J., concurring in judgment); *Lee v. Weisman*, 505 U.S. 577, 586 (1992); *Harmelin v. Michigan*, 501 U.S. 957, 980 (1991); *Allegheny*, 492 U.S. at 595, 602; *Edwards v. Aguillard*, 482 U.S. 578, 583 n.4 (1987); *Bowsher v. Synar*, 478 U.S. 714, 724 (1986); *Sch. Dist. of Grand Rapids v. Ball*, 473 U.S. 373, 390 n.9 (1985); *Wallace v. Jaffree*, 472 U.S. at 61; *Lynch*, 465 U.S. at 674.  Any characterization that *Coles* dismissed *Marsh* as a one-of-a-kind *judicial aberration* is simply inaccurate.

While it is true that, since *Marsh*, the Supreme Court has not addressed another case calling for its direct application, *Marsh* is not a mere anomaly in the law.  In addition to the Supreme Court's *Van Orden* comments and the Sixth

Circuit's *Coles* decision, many courts, including this one, have correctly noted the role of *Marsh* as an alternative to *Lemon* and turned to *Marsh* in Establishment Clause challenges.[8]

In *Van Zandt v. Thompson*, 839 F.2d 1215 (7th Cir. 1988), this Court held that *Marsh* controlled the question of whether a prayer room in the Illinois State Capitol violated the Establishment Clause. *Van Zandt*, 839 F.2d at 1220 ("Under the distinct analysis employed in *Marsh,* we conclude that H.R. 408 does not violate the establishment clause."). And in considering whether to apply *Lemon* to an Establishment Clause challenge to the pledge, this Court has repeatedly and correctly followed the Supreme Court's *Marsh* lead when it has held that deeply rooted religious practices should be exempted from the *Lemon* test. *Sherman v. Cmty. Consol. Sch. Dist.*, 980 F.2d 437, 445-48 (7th Cir. 1992); *Tanford v. Brand*, 104 F.3d 982, 986 (7th Cir. 1997). Most recently, when considering the merits of a case that was later reversed on standing grounds, this Court applied *Marsh* to legislative prayer. *Hinrichs v. Bosma*, 440 F.3d 393 (7th Cir. 2006) *reversed on other grounds*, *Hinrichs v. Speaker of the House of Representatives of the Ind. Gen. Assembly*, 506 F.3d 584, 585 (7th Cir. 2007).

Many other courts have applied *Marsh* in other Establishment Clause challenges. *See, e.g., Simpson v. Chesterfield County Bd. of Sup'rs*, 404 F.3d 276 (4th Cir. 2005) (holding that under *Marsh*, opening prayers at county board of

---

[8] Your *Amicus* notes that some courts have incorrectly tried to limit *Marsh* to chaplaincy cases. *See, e.g., Graham v. Cent. Cmty. Sch. Dist*, 608 F. Supp. 531, 535 (S.D. Iowa 1985). That approach, however, differs from the Supreme Court's application of *Marsh*.

21

supervisor meetings did not violate the Establishment Clause); *ACLU of Ohio v. Capitol Square Review and Advisory Bd.*, 243 F.3d 289 (6th Cir. 2001) (applying *Marsh* to uphold the constitutionality of Ohio's motto, "With God, All Things are Possible"); *Murray v. City of Austin, Tex.*, 947 F.2d 147 (5th Cir. 1991) (holding that under *Marsh*, a cross in a city insignia does not violate the Establishment Clause). While reasonable jurists may debate the exact contours of *Marsh*, *Marsh*'s validity is settled. *Marsh* is a valid exception to *Lemon* and the court below should have considered whether it should apply *Marsh* rather than *Lemon*.

### B. Marsh *is Appropriate for §119 Because Prayer is Deeply Rooted in America's History; Moreover, Under* Marsh*, §119 Does Not Violate the Establishment Clause.*

Contrary to the belief of the court below, *Marsh* is not limited to special instances of "ceremonial deism." The court below relied on the comments of a single Supreme Court Justice to explain its incorrect conclusion that *Marsh* is limited to "ceremonial deism." *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *62-63 (quoting *Lynch*, 465 U.S. at 693 (O'Connor, J., concurring)). Justice O'Connor's view is not controlling precedent; *Allegheny* did not adopt it. After noting interest in Justice O'Connor's *Lynch* concurrence, *Allegheny* applied the *Lemon* test, focusing on the first two prongs of purpose and effect. *Allegheny*, 492 U.S. at 597. Thus, *Marsh* remains an exception to *Lemon*. *McCreary*, 545 U.S. at 859 n.10; *Van Orden*, 545 U.S. at 688 (plurality). Just as any exception cannot and should not be reconcilable with a general rule, the exception of *Marsh* cannot and should not be reconciled with *Lemon*.

As the President and other *Amici* have demonstrated, prayer and public proclamations of prayer are deeply rooted in America's history.  As a result, the constitutionality of §119 should be evaluated under *Marsh*.  The court below was correct in its understanding that simply applying *Marsh* does not ensure that a state action passes Establishment Clause muster.  *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *65-66.  *Marsh* suggests that a constitutional state action should not proselytize nor advance or disparage any religion.  *Marsh*, 463 U.S. at 795-96 (ending its inquiry once the court was satisfied that the government action was not "exploited to proselytize or advance any one, or to disparage any other, faith or belief").  Some courts, including this one, have also interpreted *Marsh* to impose an additional requirement that the state action be non-sectarian.  *Hinrichs*, 440 F.3d at 399.[9]

---

[9] *Hinrichs*, which was reversed in 2007 on standing grounds, was based on a survey of circuit court opinions that is now outdated.  In a 2008 opinion, the Eleventh Circuit rejected the argument that *Marsh* only allowed non-sectarian prayers.  *Pelphrey v. Cobb County*, 547 F.3d 1263, 1266 (11th Cir. 2008).  The *Pelphrey* Court acknowledged that the *Marsh* Court *noted* that the prayers were non-sectarian.  *Id.* at 1271.  However, the *Pelphrey* court also explained that the *Marsh* Court looked at multiple factors in determining that the *Marsh* prayers were constitutional.  *Id.*

The more important point to be derived from *Pelphrey* is that courts are not well-suited to distinguish between sectarian and non-sectarian prayers.  The *Pelphrey* court summarized the problem in the following way.  First, the court declared that "[w]hether invocations of 'Lord of Lords' or 'the God of Abraham, Issac, and Mohammed' are 'sectarian' is best left to theologians, not courts of law."  *Id.* at 1267.  Next, the court admitted that "[w]e would not know where to begin to demarcate the boundary between sectarian and nonsectarian expressions," and added that "the taxpayers have been opaque in explaining that standard."  *Id.* at 1272.  Third, the court pointed out that "[t]he taxpayers' counsel fared no better than his clients in providing a consistent and workable definition of sectarian expressions."  *Id.*

Although your *Amicus* does not believe that *Marsh* is limited to non-sectarian actions, it is not necessary to debate such a requirement. If this Court determines in this case that §119 must be non-sectarian to be upheld under *Marsh*, §119 will meet that requirement. Despite the efforts of the court below to rewrite the statute as one of exclusively Christian prayer, §119 does not make any sectarian claims.[10]

Section 119 also does not proselytize, advance, or disparage any other faith or belief. Prayers may be religious without proselytizing and there is no indication that §119 invokes proselytizing prayer. In their *Marsh* dissent, Justices Brennan and Marshall discussed the multiple meanings that "prayer" has, noting that some believe that prayer must proselytize while others do not. *Marsh*, 463 U.S. at 821 (Brennan, J., dissenting, joined by Marshall, J.). Justices Brennan and Marshall also noted that some believe that a proper prayer must convert its hearers. *Id.* at 821, n.52. While prayer may take the form of proselytizing or conversion, it is possible to pray without doing either. "Under *Marsh*, we know that proselytizing

---

Because *Hinrichs* predated *Pelphrey*, *Hinrichs* did not consider the Eleventh Circuit's view that courts (and litigants and attorneys) are not qualified to decide where the boundary lies between sectarian and non-sectarian. Therefore, *of necessity*, the constitutionality *vel non* of legislative prayer should be determined by *Marsh's clear* directive that the court *should* determine whether there is any "indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." 463 U.S. at 794-95.

[10] It seems that the court below was, in part, influenced by the private sectarian actions of an originally-named defendant, the National Day of Prayer Task Force's chairperson. For example, it discussed the Task Force's activities and referred to the Task Force's "Judeo-Christian view of prayer." *FFRF*, 2010 U.S. Dist. LEXIS 37570, at *16-17, *43. However, neither of these matters is attributable to in §119. Independent, private sectarian actions are not subject to constitutional review and should not influence an evaluation of §119.

prayers—that is, those that seek to convert—are problematic.  Inaugural prayers traditionally have not crossed that boundary." *Newdow v. Roberts*, No. 09-5126, 2010 U.S. App. LEXIS 9370 at *50 (D.C. Cir. May 7, 2010).  Section 119 does not direct the content of prayer, therefore there is no risk that it invokes proselytizing prayer.

Similarly, there is no indication that §119 advances any faith or belief.  Although private citizens (such as those involved with the National Day of Prayer Task Force) have organized in a manner that may advance their own beliefs, §119 does not call for nor rely on those private actions.  As previously noted, private citizens also organize and hold specific faith-based events in connection with Constitution Day, Citizenship Day, Columbus Day, Constitution Week, Gold Star Mother's Day, and Thomas Jefferson's birthday.  But the faith-advancing activities of private citizens do not transform those national events into Establishment Clause violations.  Similarly, the activities of private citizens do not transform §119 into an Establishment Clause violation.

Finally, §119 does not disparage any faith, belief, or—as Plaintiff-Appellee Freedom From Religion argues—nonbelief.  As with any other national day, all citizens are free to participate or not participate with no fear of retribution or stigma.  An individual's hypersensitivity does not equate to governmental disparagement.

## CONCLUSION

For the foregoing reasons, and for additional reasons stated in the President's

Brief, the judgment of the District Court should be reversed.

Respectfully submitted,
this 9th day of July 2010

  s/  Steven W. Fitschen
Steven W. Fitschen
      Counsel of Record for *Amicus Curiae*
The National Legal Foundation
2224 Virginia Beach Blvd., Suite 204
Virginia Beach, VA  23454
(757) 463-6133
  nlf@nlf.net

26

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,903 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in twelve-point Century.


 s/  Steven W. Fitschen
Steven W. Fitschen
         Counsel of Record for *Amicus Curiae*
The National Legal Foundation
2224 Virginia Beach Blvd., Suite 204
Virginia Beach, Virginia 23454
(757) 463-6133

## CERTIFICATE OF SERVICE

I hereby certify that that on July 9, 2010, I served the attached Brief *Amicus Curiae* of WallBuilders, Inc. in case No. 10-1973, *Freedom from Religion Foundation, et al. v. Obama, et al.*, on all required parties by depositing two paper copies and one electronic copy in the United States mail, first class postage, addressed as follows:

Lowell V. Sturgill Jr., Esq.
Civil Rights Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
        Attorney for Appellants


Richard L. Bolton, Esq.
Boardman, Suhr, Curry & Field LLP
1 S. Pinckney St., Suite 410
Madison, WI 53701
        Attorney for Appellees


 s/  Steven W. Fitschen
Steven W. Fitschen
        Counsel of Record for *Amicus Curiae*
The National Legal Foundation
2224 Virginia Beach Blvd., Suite 204
Virginia Beach, Virginia 23454
(757) 463-6133